Good morning, your honors. May it please the court, I am Shannon Martinez from the law offices of Violeta Delgado on behalf of petitioners. I would like to please reserve three minutes for rebuttal if I may. It is hoped that this case will encourage more efficient procedures for the adjudication of gender-based asylum claims. Recognizing that women suffer harms that are often the result of cultural or customary practices is essential for the development of women's human rights. Petitioners are mother and her son. Can I ask you a question? I know you must be reading something. Let me ask you a question. Yes. Let's see if we can have a dialogue. What is the social group that's in play here? Young Guatemalan females who suffered violence due to female gender. Okay, and is that what the evidence supported? Yes, your honor. The evidence seemed to talk about Guatemalan women in general. I have found several instances in the record where the evidence discusses young Guatemalan women. That would be helpful if you could point out to me, what is the evidence that supports that? On AR 561, it talks about government infrastructure aimed to provide support and protection for women and girls, using the word girls. And what is that? Pardon? What is that document on 561? It is country condition information talking about how women's rights activists have worked on campaigns to end violence against women, including creating a research center to collect statistics regarding violence against women, promoting education and assistance for female survivors. No, no, read so fast. Slow down. Okay. And recommending strengthening the government infrastructure to provide support and protection for women and girls. So by saying women and girls, that helps call out young women as a distinct social group? Yes, your honor. Okay. Anything else besides that? What else? Yes, your honor. Similarly, there's an article talking about how the vice president and the president of Guatemala promised the country that they would work to make Guatemala significantly safer again, for women and girls on AR 396. And she helped the vice president help establish a special cabinet for women. Also, if the court looks at the discussion and the supporting documents of the types of crimes that are being committed against women, for example, there's a mention on page 324 of a 25 year old woman. On AR 334, it says many of the young women killed in Guatemala were girls who didn't follow traditional rules. On AR 343, it talks about gang members responsible for femicide and it mentions adolescents. On AR 396, it discusses violence against women and then it says, and young girls in particular is nowhere near a halt and are actually on the rise. On AR 461, it again, uses the language women and girls. On AR 485, it says majority of victims, housewives and students and can be deduced that students are generally young. On AR 487, it says children and elderly make up fewer of the cases of the crimes against women. On AR 492, it said 700 women and girls murdered. On AR 494, it mentions a 25 year old. And on AR 542, it says femicide is the leading cause of death for young women. So is young women perceived as, are young women perceived as a social group in Guatemala? Yes, I, based on the laws and the types of crimes that are being committed against women, it shows that the persecutors are targeting this specific group of women. Well, it says to me, the case law is society, does society in, does the Guatemalan society perceive young women as a distinct social group? That's the test. Correct. And I think that there's- Not whether, not how persecutors would feel, but does society, Guatemalan society view young women as a distinct, or a particular social group with distinctness, I guess, I don't, whatever the language is. Correct, and I read it as- Well, the BI said there's no evidence in the record. So I'm just trying to see what you think the evidence is. Based on the sites I just gave- There seems to be, there clearly seems to be evidence in the record that Guatemalan society views women as a distinct, clearly as a distinct group. But that's not what the, that was not the particular social group that was advanced. Correct. Right, it's young women who had suffered. Is there anything about Guatemalan, is there anything in Guatemalan society about how Guatemalans view women who have been subjected to physical abuse? Pardon? Is there anything in the record that shows how Guatemalan society would view, or how they view young women who have suffered sexual abuse? The group that is being targeted is young women, and then Guatemalan legislators and politicians are, and activists are enacting, are organizing groups and passing legislation to help that group that is being targeted. So I think that since that group is being targeted, the society in general is seeing that that is the group that needs help and is trying to help that particular group that is being targeted. And the record shows that it's generally young women that are being targeted. So that naturally the legislation and the organizations would be- So is there evidence in the record about the laws that the Guatemalan Congress has passed to protect women and young women in particular? Yes, Your Honor. On AR-490, it talks about at the end of the Civil War, because historically it was state policy during the Civil War to target women as a part of the government's counterinsurgency plan. So they were training the military to rape and torture women on the other side as a war practice. So when the war ended, that practice didn't end among the men in Guatemala. So then in 1996, at the end of the war, they passed a law to prevent sanction and eradicate domestic violence, which is mentioned on AR-490. And on AR-560, it talks about a law passed in 1999, a law for dignity and comprehensive promotion of women. On AR-396, it talks about the very widely known law against femicide and other forms of violence against women that was passed in 2008, which specifies the length of the prison terms by offense, establishes specialized courts, and establishes compensation for the victims. And then in the record, there's a lot of discussion about non-governmental organizations as well that have been formed to help this group. One of the problems with your group, the proposed group, is that you talk about young women, but women grow old. And so how does that satisfy the immutability test? Yes, Your Honor. There are other cases that have found, defined a particular social group also using the word young. The matter of Kasinga is a BIA case from 1996. The particular social group in that case was found to be cognizable. And the court stated, and I think I'm quoting here, the characteristics of being a quote-unquote young woman and quote-unquote member of the tribe cannot be changed. And then also in Sisi v. Holder, it's a Seventh Circuit 2013 case, but they found that young Albanian women living alone who are targeted for prostitution form a social group. And I would argue that thinking about it, young does change with the passage of time inevitably, but you can't change right now that you're young, and you can't be asked to change that you're young at this moment in time. So while it does shift over time at some point, it cannot be changed at will. In other words, if that is indeed a distinct social group, you are not capable at the moments the violence is being perpetrated against you of getting out of that social group. You're stuck in it. Correct. At will, you cannot change the fact that you're young at this moment in time. Again, this question is probably a product of my lack of experience in these types of cases because we don't get these cases in the district court. But I just found it so confusing when I first looked at this proposed definition of the social group. And I found myself asking, well, why it seems like the applicant is kind of going through contortions to make sure she still fits in the group, but to make the group as small as possible or something like that. Whereas it seems just stepping back from the law and thinking of it as a matter of logic, I mean, it's women, right? Why such an effort? Was she represented when she sought to define the group in this way? Yes. Why the effort to kind of almost gerrymander the group in the way that she's done here? Where does that effort come from? Why wouldn't you just say the social group is women and women are victims of sexual violence and other kinds of violence because they're women with great frequency in Guatemala? Yes, Your Honor. I would say because of the prong of a particular social group saying that it must be defined with particularity and not be overbroad. And there's always the fear. And since there has been no case law to date coming out saying that women in general is a cognizable particular social group, erring on the side of safety. I guess the other answer to that question is that even though, I mean, I think theoretically women could be particular social groups that's protected. But I think the BIA and our court basically have dealt with like subcategories, like women who've suffered domestic abuse. I think the BIA's decision. What does that decide? Women from Guatemala, Guatemalan women who have suffered domestic abuse. Domestic abuse, yeah. Women who've suffered genital mutilation and other such things. It seemed to me that you were trying to fit it in that sort of number of categories of more narrow. Correct. Just to comply with the particularity requirement. But based on our recent cases, one of the problems is if you're gonna do that, then you have to meet the other parts of the definition of a protected social group, which that has to be distinct and immutability and whatnot. So that's what I was asking you to begin with. What is the evidence that supports the idea that Guatemalan society perceives young women as a distinct social group? And you pointed to some things which I think are helpful. My other question was women who are abused or they looked on differently and categorized differently because they've been sexually abused. Yeah, that was my, what I was confused about is are we supposed to ask whether Guatemalan society views young women differently? Or are we supposed to ask whether Guatemalan society views young women who have been victimized by violence because they're women differently? Correct. I would say both. But the fact that it, because it's not just that have previously suffered the abuse, it's women, or I think the record shows that we're targeting for being women, young women, not for having- Except for you defined the group you put forward though was young Guatemalan females who have suffered violence due to female gender. Correct. So you put in that definition those who had been victims. Right? Correct. So is that the group that we're dealing with? In this case, yes, it is the group. And respondent falls within that group and is claiming that that is the group, yes. And if the court is concerned about a circular particular social group- Keep your voice up, please. Yes. And if there are any questions about whether there's an issue with it being a circular particular social group, the case law has held that it cannot be defined exclusively by its persecution so that it is impermissibly circular. And that would be AME, INRE, AME, and JGU. And other cases also hold that it cannot be defined the only shared characteristic that defines the particular social group such as C, matter of CA 23INN, DC951. So the point of those cases is what? Is that it's not a problem that it includes that she had suffered violence in the past in her particular social group. All right, thank you, counsel. You're over your time, sir. Thank you. Thank you. Good morning, your honors. May I please the court? Elizabeth Fitzgerald-Sambu on behalf of Respondent Attorney General of the United States. Here in this case, there are two separate dispositive reasons why the agency denied petitioner's asylum and statutory withholding of removal claim. Can you slow down too, please? Sorry. And so as I said, each reason is dispositive. So turning to the first one in our brief, substantial evidence supports the agency's finding that Guatemala would be, or that she failed to show that Guatemala would be unable or unwilling to protect her from harm. And so here, the agency properly considered the fact that she failed to report, which this court has held as appropriate for the agency to consider. And then the agency determined that she failed to show that reporting would have been futile or dangerous. So here, her stated reasons for why she didn't report were because, first of all, she was ashamed of the past rape that happened, in part because she had a boyfriend at the time and didn't want to tell anyone that it had happened. And also, she just stated that she believed that the police wouldn't do anything because she had heard of one case where that happened in the past, where the society or her town believed that the police didn't do their job. But this court has already held in Castro Perez and also in Ornelas Chavez that an applicant's simple just stated belief that the police wouldn't have done anything isn't sufficient to meet the burden of proof here. And in fact, ample evidence in this record shows that Guatemala has made enormous efforts to protect people from harm. But didn't she testify about a number of incidents that happened to a number of people in her town where the police just didn't do anything about it? I believe she testified and also stated in her declaration that in the past, the police in her town failed to report one murder of a male child, I believe. So the townspeople became angry and I believe she said that they burned down the police station. But she did state that there were police available to her. It was just that it was at some distance away, approximately 45 minutes away. And I believe that's walking, but it's unclear based on her testimony. Doesn't our case law say that we have to look at the total record? I mean, just the fact that she didn't report it. Right, yes, correct, Your Honor. Bringus Rodriguez, who recently said that just because you don't report it doesn't necessarily mean your case fails, but we need to look at the entire record. Correct, Your Honor. Yes, correct, Your Honor. The agency is obligated to consider all relevant evidence. Right. Which in this case. But if you look at the record, there's plenty of evidence in the record that reporting crimes to the Guatemalan police is not very effective. And especially when it comes to these kinds of allegations of femicide or abuse, physical abuse. And the record, I mean, there's just repeated sites in the record that would support that. So if you look at all the evidence there, that doesn't seem to be a hurdle that she has to overcome. Well, Your Honor, our position is that the evidence that she submitted actually shows the opposite, that Guatemala has taken enormous efforts. They have 24-hour tribunals that are open all day for women to report. There's police officers assigned exclusively to female victims of crime. There's a possibility of restraining orders. There's now mandatory sentences for people who perpetrate crime against women. There's training on these issues. And then the evidence that she submitted also shows that Guatemala's efforts have been successful and that reporting has gone up. And that in some cases with the special tribunals, the crime rate has actually dropped. And then also her evidence states that Guatemala realized that many women were not reporting and they researched why this was so and asked people, I'm assuming. And so basically they discovered that there's a social acceptance of violence, there's cultural stigma, language barriers, et cetera. The State Department report that's in the record notes that rape victims frequently did not report crimes due to lack of confidence in the justice system, social stigma, and fear of reprisal. Correct, Your Honor. But then the evidence also says that the government realized this and then has taken more efforts by creating workshops for women to report. So, and actually teaching women about their resources and that they have the availability to report and that the government would take these steps to assist them. So based on that evidence, it's our position that the petitioner has failed to show that the record compels reversal because there is ample evidence showing that Guatemala has taken all these efforts, it's been successful. It was her burden to show that it would have been futile or dangerous for her to report. And here, the evidence that she submitted basically was just her testimony stating that she would have had to walk a far distance and she just assumed that they wouldn't do anything, which was not enough to meet her burden of proof. You had another argument. I think reporting isn't your best argument. So you have another argument. It's really not. Having written for Ms. Rodriguez, I just don't think it's your best argument. So why don't you lead with something else? Okay. Why isn't this a, I mean, why are, what in your view is, what is the position of the Department of Justice on whether or not women in Guatemala are a particular social group due to the pervasiveness of femicide? Well, Your Honor, our position is that that issue is not ripe for review now before this court and that because the agency hasn't spoken on this issue yet. So this is an issue that there has been decades of litigation about this and the board obviously has considered these issues over the years. And as this court had mentioned earlier, there have been many cases on domestic violence related claims, like in matter of ARCG and then female genital mutilation claims, et cetera. And actually in matter of ARCG, which was the one in general based on a domestic violence type of claim, there the petitioner in that case, or the respondent did argue that women, or Guatemalan woman is a cognizable particular social group. And there the board of immigration appeals found that it wasn't necessary to analyze that claim because they analyzed her other claim that she raised. So has the board ever addressed this in a precedential decision? No, Your Honor. So the board has never addressed this in a precedent decision. So there's a case from our circuit, Perdomo, which Judge Paez wrote, that sent it back to the board asking them to consider this and they haven't done it yet? Right, Your Honor. It's my understanding that Perdomo is still pending before the courts. So yes, it's just that this issue hasn't come up, it hasn't been right for review. Either the cases the board found that it wasn't necessary to analyze it, for example, in a matter of ARCG, because in that case they granted based on a different particular social group. So it just hasn't come up. And then here in this case. So why shouldn't we, I mean, if that matter is being considered by the BIA in another case, I mean, why shouldn't we remand for consideration of that issue here? I mean, it seems pretty twisted to say, well, there's all this violence against women, but in Guatemala, but because she happened to define the proposed social group in a way that doesn't quite work, we, the BIA, are not gonna consider whether she in fact is persecuted, in fact is eligible for asylum based on her membership in a particular social group, namely women. Right, Your Honor. So applicants are obligated to raise all of their claims that they wanna rely on. And there's no limit to the number of claims that they want to rely on. So here, she relied on a political opinion claim and two different particular social groups, one of which she later said she didn't wanna rely on. But if a Holocaust victim came to the United States and said, I'm a member of a particular social group of young Holocaust victims, would we seriously deny their asylum application because they didn't define the group as Holocaust victims, but rather made the mistake of defining it as young Holocaust victims? Well, Your Honor, it's slightly more nuanced. And the reason why it's a little bit complicated is because particularly for the particular social group claims, it's very fact-specific. So as Your Honors are aware, there's the three requirements of immutability, particularity, and social distinction. And there are other considerations such as- But look, could I get an answer to my question? I mean, would, if that victim defined themselves as a young Holocaust victim, would you be taking the position that nobody has the responsibility to consider whether the person should be granted asylum on the slightly different ground that they are a Holocaust victim? Well, Your Honor, I think the Holocaust victim is a slightly different scenario because they are most likely, the person would be relying on the religious ground, which is a little bit different than the particular social group ground. But even if, hypothetically, they relied on a particular social group ground, here, we have to consider the fact that the applicants here- But I mean, the Holocaust wasn't just about religion. I mean, there were a lot of gay people who were killed. True, Your Honor. And so, for example, gay people is a good example because that one, it would be a particular social group ground if they're filing for asylum. Okay, so what if they said, a young, my social group is young gay men, as opposed to just gay people? We'd all say, well, let's just throw it all in garbage and send them back to their country? Your Honor, it is the applicant's burden to show eligibility for- So that's a yes. So, I guess, yes, technically, but- If they fill in the box wrong, they have to get, their asylum application has to be denied. No matter what the circumstances they've suffered, no matter what harm they've suffered, no matter what persecution they are, in reality, experiencing, if they define the social group incorrectly, there's no independent responsibility on the part of the IGA or the BIA or the courts to ask whether they defined it wrong and whether there should be an analysis of the social group as properly defined. I think the answer is technically yes, but it's a little bit more nuanced because, for example, with Holocaust victims and homosexuals, those have been things that have been recognized to be particular social groups in the past. So even though it's still the applicant's burden to say the exact claims that she wants to rely on, and then, of course, the agency develops the record and considers what they're presenting. But here, the particular social group of woman or just woman plus nationality is something that, as I mentioned, has had decades of litigation. And as Petitioner's Counsel even stated today, the reason why they didn't rely on that is because the agency hasn't recognized that as a particular social group. There has been a lot of litigation about whether it even is, et cetera. And so for strategic purposes, she chose not to rely on that ground. And so the case law- Well, I'm not sure it would have done any good anyway because what the board said here was that nothing in the record shows that women who suffer violence in Guatemala are perceived, considered, or recognized by Guatemalan society to be a distinct group. Right, Your Honor, and that's- That's just not accurate. There is evidence in the record that shows that Guatemalan society looks at women as a distinct group. Well, Your Honor, in that sentence of the board- Recently, it was brought out by Petitioner's Counsel. They passed laws to protect women. They've taken all these steps that you just pointed out to protect women. They've clearly recognized women, and clearly women who have suffered abuse, femicide, however you want to call it, as a distinct group. And the problem here is that she just happened to tack on the words young women in Guatemala. Right, Your Honor. And I even think that, as Counsel pointed out, there is evidence in the record that shows that Guatemalan society views young women as a distinct group. Correct, Your Honor. And that sentence of the board- And I don't see how the board can just simply say there's no evidence in the record. There is evidence in the record. But again, her group is also defined by the persecution, so she includes those who have suffered violence in the past. So even though she- Well, I mean, just like, you know, well, why did the Guatemalan society, why did the Guatemalan Congress pass these protective measures? Well, Your Honor- And were they at all concerned about young women? It's unclear. Our position is that the evidence doesn't show- How does Guatemalan society look upon women who have suffered sexual abuse? Right, Your Honor. I don't think the sexual abuse part is in the particular social group that she raised, but even in the- No, she's talking more about who, what was her, I read it before, due to female, suffered violence due to female gender. Correct, Your Honor. And I think the evidence in this case shows that Guatemala is a very dangerous place for everyone. And so just because the government has passed some things for femicide, they've also taken many efforts to control violence against everyone, including men. So as we argued in our brief, there's evidence showing that men are targeted, women are targeted. So yes, they have laws for femicide, but the murder rate for men is actually higher than it is for women. So although Guatemala has taken these steps, it's not, she hasn't shown that Guatemalan society perceives young women specifically who have previously suffered violence as somehow this distinct group, which is what her burden is. Well, the other part of this whole analysis is the on-account of problem. Right, so, but that actually- But the board said there's no evidence here of a group, of a protected group. Right, Your Honor. So the board didn't reach that nexus on account of issue because the board held that the particular social group was not socially distinct. So it didn't need to reach the nexus issue here. But I would just urge this court not to decide in the first instance whether a woman is a cognizable particular social group because that is a momentous decision that the agency still hasn't decided. And of course, this court has deferred to a matter of MAVG, which is the board's interpretation of the term particular social group. So especially the social distinction requirement at issue here and also particularity, those require factual findings made by the immigration judge in the first instance. So here, it's just very clear that she, that the petitioner did not want to rely on the particular social group of woman or Guatemalan woman. But just, can I go back just to another point you said? So the board is considering this issue now? You said it's still in litigation. My understanding is that Perdomo is administratively closed. So it could be considered in the future. But right now, it's not active. Could it be considered in this case if we remanded it to the board? It could be, but our position is that this court shouldn't remand because she failed to exhaust, which is a mandatory requirement. So because she chose not to rely on that particular social group, and then the agency did not consider it because she failed to raise it, this court shouldn't be deciding how she should have litigated the claim. That really was for her counsel to decide both before the immigration judge. Seems pretty harsh, doesn't it? I mean, I think there are exceptions to exhaustion. Well, Your Honor, I mean, even the board clarified in WYC and HOB, the reason why applicants are required to exhaust particular social groups to the immigration judge first is because if not, then there would be this continuous cycle of litigation where either this court or the board would say, we think that this other particular social group that you didn't raise might have been better for you. Why don't we send it back? So is it coming up in other cases than Perdomo within the agency? Yes, so it's my understanding, just based on discussions with my colleagues in the office, that there are claims in the Ninth Circuit that are being raised here where the particular social group is just women or a women plus nationality claim. Because I understand previously, the board said that would be too large of a group, and it was based more on demographics and not. Yes, Your Honor, and there has been, I believe, subsequent litigation stating that just because a group is large doesn't mean that it lacks particularity. So, yes, so that's the agency's way. If you apply the test that the board has adopted with the case law that we've adopted, it sure looks like Guatemalan women would meet the test of immutability, particularity, because the boundaries are clearly identified. Right, Your Honor. The contours clearly identified, and distinctiveness with these laws and with the way in which the Guatemalan society has looked upon women lately, sure looks like they'd meet the test. The problem is whether or not somebody could prove that it's on account of. That's where the analysis really should be. Right, Your Honor. Why? Of course, it is possible that the board could say that it is a cognizable particular social group. And again, it's important to keep in mind that the three- Well, they don't want it because they're afraid. I can't speak on that, I don't know. Well, I understand that. I mean, but I assume- There's been stuff in the paper that the Attorney General is taking a look at the case of Guatemalan women who've been victims of domestic violence. Right, Your Honor. In matter of AB, which the Attorney General certified to himself, the issue in that case is, I believe, whether individuals who are victims of crime are able to show a cognizable particular social group. So that's the issue that has been briefed. Is that Guatemalan women? I'm actually, I don't recall the nationality. So all that was made public by the Attorney General, from what I can recall, is just the issue and what the parties were supposed to agree. The Attorney General invited supplemental briefing. Yes. And the attorney in that case for the alien made the board's decision public. So I don't recall the nationality, but that did show that it was a domestic violence claim, that issue. But again, I would just urge that this is a momentous decision. The agency should decide this first. There are other considerations in a cognizability analysis, including, as I said, whether a particular social group is defined circularly. Then there's also a policy rule against people who are gang members, basing their particular social group on that. So this is something that it should be briefed before whatever body makes the decision decides this. So when this comes up for the board with proper briefing and when it's exhausted, then the agency will then be able to consider what the treaty intended, what Congress intended of this definition, because really women would change the definition of persecution in some ways, because it's just so large. But again, the nexus requirement would be important. So I don't know if there are other questions. I really appreciate it. Thank you so much. Thank you, counsel. Sylvester Mendoza versus Sessions would be submitted and we'll take up- She wanted to. Oh, you had a, I'm sorry. Did you, come on. You can have a little bit extra time too. Thank you, your honors. I would just like to close by saying regarding the exhaustion element, the latest case that came out on that point, which I can't find at the moment, but if the court would like for me to find it, I will. But it points out that the point is to put the lower courts on notice of what they're trying to make a decision upon. And with regard to our particular social group, the end of it says due to gender. And in the closing argument made before the immigration judge, it was talked about generally as women, gender, femicide, and as well as in the BIA brief. And the BIA decision actually kind of more generally discusses the particular social group, moving away from our definition into kind of talking more generally about women as a gender, as a whole. So I think that if it, we please request that it's remanded so that, because the, the courts were put on notice about women as a whole as well if the group wasn't defined properly. All right, thank you, counsel. Sylvester Mendoza versus Sessions will now be submitted.
judges: Wardlaw, Paez, Chhabria